PEARSON, DANIEL, Judge.
I dissent. The words “Canakaris v. Canakaris ” are not talismans in the presence of which the rights of divorce litigants fade away and disappear. This noteworthy decision, which is slowly, surely and mistakenly being read to mean all things to all people, does not authorize a trial court to resolve as it pleases the financial aspects of broken marriages; does not require us to place our imprimatur on whatever outcome occurs in a dissolution proceeding; and, in the present case, does not sanction an award to the wife of mere rehabilitative alimony when permanent alimony is required.
Beneath the majority’s per curiam af-firmance and the inscription “Canakaris v. Canakaris’’ lies Martha Capps, age forty-four, a homemaker for her husband and two children (now emancipated) during a twenty-three-year marriage. Martha, having spent two years in college a quarter of a century ago, was, at the time of the final hearing and for a year and a half before, employed full time as a bookkeeper, taking home about $6,000 a year. There was no evidence that Martha had any hope of sig *582 nificantly increasing her earnings. There was indisputable evidence that to subsist Martha needed about twice what she earned and that Charles could meet these additional needs from his income and assets. The trial court acknowledged and found this deficiency to exist. Anomalously, it awarded Martha rehabilitative alimony of $500 a month, specifically providing that the amount of the award would be reconsidered within one year.[1]
The majority’s affirmance must stand or fall on the correctness of its silent, but obvious, conclusion that the trial court’s action was one within its judicial discretion.[2] Were this a case involving a truly discretionary act, I would agree that we would be obliged to recognize the superior vantage point of the trial court and affirm unless we found a clear abuse of discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). But it is demonstrably not such a case. Here the trial court recognized that the wife’s earnings were inadequate to support herself. Here it was clear that if Martha needed alimony at the time of the trial court’s order, she would need it a year later, and, predictably, for years to come. Here the only proof was that Martha was as rehabilitated as she was going to be. Rehabilitative alimony, under such circumstances, is a contradiction in terms. See Canakaris v. Canakaris, supra, at 1202 (“The principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of training necessary to develop potential supportive skills.”).
The trial court’s action did not, then, involve an exercise of discretion, but rather the application of an existing, and well-entrenched, rule of law.[3] That rule of law is that where a wife of a long-term marriage is working or capable of working, and the evidence shows that the present and prospective earnings from her labor, and other wherewithal, will not enable her to fully support herself, permanent, not rehabilitative, alimony, in an amount within the ability of the husband to pay, is required. Garrison v. Garrison, 380 So.2d 473 (Fla. 4th DCA 1980); Kvittem v. Kvittem, 365 So.2d 791 (Fla. 4th DCA 1979); Thomas v. Thomas, 364 So.2d 78 (Fla. 2d DCA 1978). See also Douglas v. Douglas, 361 So.2d 212 (Fla. 2d DCA 1978). Messer v. Messer, 342 So.2d 1076 (Fla. 2d DCA 1977); Lash v. Lash, 307 So.2d 241 (Fla. 2d DCA 1975). Since the trial court failed to apply this rule of law, we are obliged by Canakaris to reverse, not affirm.
Apparently the majority of this court shares the view of the trial court that as long as alimony, by whatever name, is awarded and the award is open to later change or extension, the choice between rehabilitative alimony and permanent alimony is innocuous. This simply is not so.
“The error is harmful even though the wife may at any time during the rehabilitative period petition for a continuation of rehabilitative alimony or a modification to make the alimony permanent. This is so because the burden is placed upon the wife to show significantly changed circumstances before there can be a modification. If she is entitled to permanent alimony it should be awarded *583 now. Later, if the husband can show changed circumstances, either his or hers, he may be entitled to modification.” Garrison v. Garrison, 351 So.2d 1104, at 1105 (Fla. 4th DCA 1977).

See also Colucci v. Colucci, supra.

Since the determination of the amount of $500 was based on the wife’s subsistence needs and did not include any amount for schooling, training, and the like, I would reverse, with directions that the award of $500 per month be made permanent alimony.

.This portion of the final judgment of dissolution read:
“The Petitioner shall pay to Respondent as rehabilitative alimony the sum of $500.00 per month commencing August 1, 1979, and the amount, if any, to be paid, shall be reconsidered after the minor child shall attain age eighteen (18) years. The consideration shall occur within sixty (60) days therefrom upon application by either party.”
The minor child was seventeen at the time of the final judgment.

. I am cognizant of the caveat in Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980), that the alimony provision must be reviewed as a part' of the entire award scheme. The present case, • however presents only the narrow issue of rehabilitative versus permanent alimony, both parties conceding that the amount fixed is within tolerable limits, taking into account the total picture.

. See cases collected in Judge Schwartz’s excellent opinion in Colucci v. Colucci, 392 So.2d 577 (Fla. 3d DCA 1980).